IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

TIESHA DAVIS, AKIA WIGGINS-SHABAZZ,
and HOUSING OPPORTUNITIES PROJECT
FOR EXCELLENCE, INC.,

       Plaintiffs,

vs.

ZRS MANAGEMENT, LLC, ZOM FORXROFT, L.P.
d/b/a SORRENTO AT MIRAMAR, ZOM
MONTERRA, L.P., d/b/a MONTERRA APARTMENTS

       Defendants.

_____/

## **COMPLAINT**

COMES NOW, Plaintiffs, TIESHA DAVIS, AKIA WIGGINS-SHABAZZ and

HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. and sues for Declaratory

Judgment, Permanent Injunctive Relief and Damages against Defendants ZRS

MANAGEMENT, LLC; ZOM FOXCROFT, L.P. d/b/a SORRENTO AT MIRAMAR; ZOM

MONTERRA, L.P., d/b/a MONTERRA APARTMENTS and states as follows:

1.     This is an action for declaratory judgment, permanent injunctive relief, and

damages for discrimination on the basis of gender, pregnancy status, and familial status in the

rental of housing.  Defendants have engaged in a pattern or practice of conduct with the purpose

and the effect of discriminating against families with the result of limiting the number of children

who may live in apartment buildings that the Defendants own or manage.  This discrimination

has been carried out through the use of, among other things, policies and procedures that require women to disclose and provide proof of their pregnancy status and including such fetus in the number of persons allowed to occupy rental units.  This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq. (The "Fair Housing Act"), as well as Chapter 16 ½ of the Broward County Code of Ordinances.

## Jurisdiction and Venue

2.      Jurisdiction is conferred on this Court by 42 U.S.C. §3613, and §3617, 28 U.S.C. §1331, 28 U.S.C. §2201-2202, and 28 U.S.C. §1343.

3.      Venue is proper in this District under 28 U.S.C. § 1391 as this is the district in which the events giving rise to the Plaintiff' claims occurred and as this is an action which is not founded solely on diversity of citizenship.

## PARTIES

### *Plaintiffs*

4.      The Plaintiff, TIESHA DAVIS, is a single African-American mother of three young children, and presently lives, with her family, in Broward County, FL and all Plaintiffs are otherwise *sui juris.*

5.      The Plaintiff, HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. (hereinafter HOPE), is a private, Florida not-for-profit, 501 (c) 3 corporation established in 1988, one of three in Florida dedicated to eliminating housing discrimination and promoting fair housing. HOPE employs a three-tiered system of private enforcement, education outreach and counseling to achieve its mission to affirmatively further fair housing. Its programs are designed to ensure that people are offered the right to select housing of their choice without discrimination based on race, religion, color, national origin, sex, disability, marital or familial status, or such

other protected classes as may be conferred by federal, state or local laws. HOPE is the only private not-for-profit fair housing organization in Miami-Dade and Broward Counties engaged in testing for fair housing law violations, and pursuing enforcement of meritorious claims.

6.      Throughout Miami-Dade and Broward Counties, HOPE engages in activities to identify barriers to fair housing practices, including practices that discriminate against persons because of race or color.   As part of its mission to uncover housing discrimination, HOPE expends its resources to train and deploy testers - individuals who, without an intent to rent or purchase a home or apartment, pose as a renter or purchaser for the purpose of collecting evidence of discriminatory housing practices.

7.      The Plaintiff, AKIA WIGGINS-SHABAZZ, is an African-American mother of two young children who is employed as a tester for HOPE, and is otherwise *sui juris*.

<u>*Defendants*</u>

8.      Defendants ZRS MANAGEMENT, LLC (hereinafter ZRS) is a Florida Limited Liability, licensed to and doing business in Broward County Florida.

9.      The Defendant, ZOM MONTERRA, L.P., d/b/a MONTERRA APARTMENTS (hereinafter MONTERRA), is a Florida Limited Partnership that owns a multi-family apartment development of 300 units, located at 2601 Solano Avenue, in Cooper City Florida.

10.      The Defendant, ZOM FOXCROFT, L.P. d/b/a SORRENTO AT MIRAMAR (hereinafter SORRENTO), is a Florida Limited Partnership that owns a multi-family apartment development of 320 units located at 9227 SW 41st Street, in Miramar, FL.

11.      Both multi-family apartment developments, MONTERRA and SORRENTO are operated by ZRS. As a management company, ZRS, is the disclosed agent for the owners of said property, ZOM FOXCROFT, L.P. d/b/a SORRENTO AT MIRAMAR and ZOM MONTERRA,

L.P., d/b/a MONTERRA APARTMENTS, and as such, each of the Defendants in taking the actions alleged in the Complaint were the agents, principals, or co-conspirators of one another. Accordingly, references to SORRENTO refer to both ZRS and ZOM FOXCROFT, and references to MONTERRA refer to both ZRS and ZOM MONTERRA.

12.     These apartment communities are low-income, affordable rental housing.  In exchange for valuable consideration, the defendants agreed to develop and maintain such low income rental housing in compliance with regulations promulgated under Section 8 of the United States Housing Act of 1937, Section 42 of the Internal Revenue Code of 1986, the rules and regulations of the Florida Housing Finance Corporation Act, §§ 420.501-420.516, in addition to the requirements of the Federal Fair Housing Act.

13.     Further, for valuable consideration in exchange for a commitment of fifty million dollars of multifamily bond funding to finance the acquisition and the construction of these two properties, the owners of MONTERRA and SORRENTO agreed to Land Use Restriction Agreements for the use of said properties for affordable housing purposes.[1]  Included within the restrictions was the agreement to comply with the fair housing act, and explicitly, not to discriminate on the basis of familial status and minor dependents, as follows:

**Section 2. Covenants and Restrictions on Use of Property.**

(l) that the Borrower shall not discriminate on the basis of race, religion, color, age, sex, marital status, familial status, disability or national origin in the lease, use or occupancy of the Property or in connection with the employment or application for employment of persons for the operation and management of the Property; provided, however, that nothing herein shall be deemed to preclude the Borrower from discrimination based on income or reported tenant problems relating to the applying tenant or tenants in renting units set aside for Low-

---

[1] ZOM Foxcroft LURA is found in the Official Records Book of Broward County Florida, 47931, starting at page 1387; ZOM Montera LURA is found in the Official Records Book of Broward County Florida, 47930, starting at page 1669.

Income Tenants in compliance with the requirements of the Code and this Agreement; notwithstanding the foregoing, the Borrower shall not be precluded from discrimination based on age and familial status so long as the Borrower complies with all requirements imposed by or pursuant to the federal fair housing law and regulations of the Department of Housing and Urban Development (24 CFR) issued pursuant to Title VI, the Fair Housing Act, the Rehabilitation Act, the Age Discrimination Act or Executive Order 11063, and similar state laws and regulations;

**Section 9. Rental Requirements**; Restricted Units. The Borrower specifically agrees that the Borrower will not refuse or deny rental occupancy in the Property to persons whose family includes minor dependents who will occupy such unit, unless such refusal is based upon any legal reasons not related to the presence of such minors in the family as provided herein.

14.     The Fair Housing Act was amended in 1988 to prohibit, *inter alia,* housing practices that discriminate on the basis of familial status. 42 U.S.C. §§. 3601-19. "Familial status," as relevant to this case, is defined by the Act as "one or more individuals (who have not attained the age of eighteen years) being domiciled with ... (1) a parent or another person having legal custody of such individual or individuals…… *Id.* at § 3602(k); 24 C.F.R. § *100.20.*

15.     Plaintiff, TIESHA DAVIS, is a single mother of three young children who is qualified to rent at SORRENTO.

16.     On January 26, 2017, TIESHA DAVIS initially sought residency at SORRENTO. She was advised that there were no units available, and she would be placed on the waiting list.

17.     During the summer, TIESHA DAVIS checked to see if there was any units available, and again, reapplied on August 23, 2017.

18.     TIESHA DAVIS was advised that there was an apartment available and went to SORRENTO on September 18, 2017.  During each event, TIESHA DAVIS met with ZRS Assistant Property Manager Jose Galindo.   In September 2017, TIESHA DAVIS was four

months pregnant when she met with Mr. Galindo and saw the apartment that she was going to lease.  During such time Ms. DAVIS was noticeably pregnant, to the extent that Mr. Galindo insisted that she sit in the front seat of the golf cart when he was driving her through the property.

19.     On September 26, 2017, TIESHA DAVIS entered into a lease with SORRENTO, attached hereto as Exhibit "A"

20.     On October 1, 2017, TIESHA DAVIS had a Gender Reveal party at Painting with a Twist, where her friends gave her a picture of a stork with blue shoes, and many boxes of diapers and baby products. She placed those items in a closet in her apartment.

21.     Each and every month following the inception of her tenancy, SORRENTO would spray her apartment for pests, and would also conduct an inspection of her apartment.

22.     On January 8, 2018, TIESHA DAVIS received a notice that her apartment was going to be subject to pest control services and an inspection.

23.     On January 9th, Ms. DAVIS' apartment was entered into by a pest control person and Sorrento leasing consultant Rosa Diaz.  Pursuant to information and belief, Ms. Diaz looked through Ms. DAVIS apartment and saw her baby goods.

24.     On that same day, Sorrento Assistant Manager Galindo called Ms. DAVIS and asked if she was pregnant.  As a result of her diabetes, Ms. DAVIS had a high risk pregnancy, and was very large due to the excess amniotic fluid (*polyhydramnios*).  Since the beginning of her pregnancy, it was obvious that Ms. DAVIS was pregnant, and she did not attempt to ever hide it.

25.     Ms. DAVIS responded to Mr. Galindo that she was, and that he knew that she was pregnant from the start of the lease, and wanted to know why.

26.     Sorrento Assistant Manager Galindo stated that DAVIS should have let them know that she was pregnant in her application, that she had to check a box, and that she was required to show them a letter from her doctor and an ultrasound at the time of the tenancy.

27.   Soon thereafter, on January 11, 2018, Sorrento sent Ms. DAVIS a Notice of Non-Renewal of Lease Agreement, attached hereto as "B", and as grounds thereto, stated

> **YOU ARE IN VIOLATION OF THE LEASE AGREEMENT AND THE RULES AND REGULATIONS**
> Under the Apartment Lease Contract; (Affordable Housing Programs) #5 Future Requests for Information #4 Accuracy of Information on Application and Questionnaire.

28.     There are no written rules, regulations, or checkboxes or lease terms regarding pregnancy status, or numbers of children (including unborn children).

29.     Because she was in the third trimester of her high risk pregnancy, this caused extreme emotional harm to Ms. DAVIS, as well as the prospect of having her child and then being subject to eviction at Sorrento.

30.     Immediately after this incident, TIESHA DAVIS spoke with her parents who told her about housing discrimination, and was referred to HOPE to complain about this discriminatory housing practice.

31.     HOPE had been investigating SORRENTO previously as part of their systemic testing program funded by the Department of Housing and Urban Development (hereinafter HUD).

32.     HOPE assigned two testers on December 18, 2017, tester 1 – a White Hispanic Woman, and tester 2 – an African American tester.

33.     The first, African American, tester met with SORRENTO leasing agent Rosa

Diaz at 11:10 PM, and in the visit, the tester was advised that there were no units currently available, but Ms. Diaz advised as to the standards and made certain inquires:

    a.  asked many people would be living with her, including children

    b.  noted the income limitations

    c.  Noted that a security deposit would be $800 if credit was approved, and an additional $500 if credit was not approved.

    d.  asked about child support

    e.  reviewed items that would result in a denial of tenancy, including cannot be a current homeowner, cannot have a history of foreclosures, short sales, or evictions, no bankruptcies or any arrests.

    f.  when asked about arrests with no convictions, Ms. Diaz responded, "once an arrest is cited on the background check, the applicant is automatically disqualified.

34.  The second, Hispanic, tester met with SORRENTO leasing agent Rosa Diaz at 12:06 PM, and in the visit, the tester was advised that there were no units currently available, but Ms. Diaz advised as to the standards and made certain inquires:

    a.  asked how many people would be living with her

    b.  noted the income limitations

    c.  asked about child support, and need a letter from the child support office stating that she does not have a child support record.

    d.  advised that she would need proof of income, drivers license and original social security cars for her and her daughter and daughter's birth certificate.

35.  Both testers received community and rental information, attached hereto as

exhibit C., which, on the face of the document, confirmed the discriminatory national origin requirements for "Original Social Security Card (all adults and children), and racially discriminatory automatic disqualification for all arrests. However, there was no comment made in these tests regarding pregnancy, or unborn children.

36.     Upon receipt of TIESHA DAVIS' complaint, HOPE engaged another tester to specifically test to determine whether the ultrasound and doctor's note for unborn children was a policy and practice of the defendants. Plaintiff AKIA WIGGINS-SHABAZZ is also a young, African American mother.

37.   On March 13, 2018, Ms. WIGGINS-SHABAZZ went to SORRENTO at 12:57 to test the property and to determine if there were any apartments available.  She met with Ms. Rosa Diaz.

38.     Ms. Wiggins-Shabazz was told the following by Ms. Diaz:

    a.   That the security deposit is $800, unless there is something on her credit, at that point, it could be double that amount.

    b.   That she cannot be a homeowner, have any evictions, bankruptcies, arrests or too many negative things on your credit.

39.     When asked about how many people would be living in the apartment, Ms. WIGGINS-SHABAZZ stated "Me, my five year old, and I'm pregnant now." Ms. Diaz said, "oh, ok. When are you due?" Ms. WIGGINS-SHABAZZ responded, "about late July."

40.     When told of the materials she needed to apply, Ms. Diaz asked for, "a copy of a birth certificate for you and your daughter, and the baby if you've had it, a non-child support record from the child support office, a doctor's note verifying your pregnancy, and an ultrasound picture."

41.  On March 19, 2018, Ms. WIGGINS-SHABAZZ went to MONTERRA at 12:50 to test the property and to determine if there were any apartments available.  She met with Ms. Maria Glover.

42.  Ms. WIGGINS-SHABAZZ was advised that the security deposit is $ 800 but could be up to double that depending on your credit, and was further advised that they do a credit check and a background check and that determines the security deposit.

43.  Ms. WIGGINS-SHABAZZ was asked how many people would be living in the apartment. Ms. Wiggins-Shabazz replied, "me, I have a 5 year old daughter, and I'm pregnant now." Ms. Glover asked will the baby's father be living there too?   Ms. WIGGINS-SHABAZZ replied no, and Ms. Glover went over the income requirements and did not request any proof of not receiving child support.  However, when advising Ms. WIGGINS-SHABAZZ the list of information that they need before she could can apply, Ms. WIGGINS-SHABAZZ was told that she will need to get a picture of a sonogram and a letter from her doctor with her estimated due date.

44.  Defendants' actions described above constitute a pattern, practice, and policy of housing discrimination on the basis of familial status, sex, pregnancy, race and national origin. In engaging in such activities, Defendants have acted intentionally or recklessly violated Plaintiffs' civil rights and damaged the rights and feelings of Plaintiffs DAVIS and WIGGINS-SHABAZZ

45.  Defendants continue to engage in the unlawful acts and the pattern or practice of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from defendants' acts and pattern or practice of discrimination based on familial status unless this Court provides further relief.

46.     As a result of Defendants' actions described above, Plaintiff DAVIS and her children suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of their right to equal housing opportunities regardless of pregnancy familial status.

47.     In support of its goals, HOPE engages in a variety of educational, counseling and referral services, as well as community monitoring activities. The Education and Outreach Program offers to housing industry providers, Condominium and Home Owner Association, public housing authorities and not-for-profit Community Development Corporations, the most current information and technical assistance necessary to fully comply with fair housing laws, consent decrees, enforcement agreements, Community Reinvestment Act regulations and affirmative marketing requirements.

48.     HOPE's time and scarce resources have been severely diverted and its mission frustrated in order to address the allegations outlined in this complaint, and has resulted in expenditures which should have been used to affirmatively further fair housing without the cost of litigation.

49.     HOPE has been, and continues to be, adversely affected by the discriminatory acts, policies, and practices of the Defendants.

50.     As a result of the acts and conduct of the Defendants, Plaintiff HOPE has suffered and continues to suffer interference with its mission, diversion of its resources and obstruction of its purpose of ensuring equal housing opportunities throughout South Florida free from race and color discrimination. Plaintiff HOPE has been, and continues to be adversely affected by the acts, policies, and practices of the Defendants and/or their agents.

51.     Defendants' discriminatory actions have (1) interfered with the efforts and

programs of HOPE which are intended to bring about equality of opportunity for all persons regardless of race or color; (2) forced HOPE to devote scarce resources to identify and counteract Defendants' unlawful housing practices and to otherwise divert those same resources from its education, counseling, and referral services; (3) interfered with the right of HOPE's constituents to enjoy the benefits of living in a community which does not discriminate against persons based on race or color; and, (4) frustrated HOPE's mission and purpose of promoting the equal availability of housing to all persons without regard to race, color, religion, gender, national origin, familial status, pregnancy or disability.

52.     Any other conditions precedent to the filing of this action have been satisfied, or have been waived.

53.     The Plaintiffs have retained the Disability Independence Group, Inc., and have agreed to pay them a reasonable fee for their services.

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT DENIAL OF RENTAL OPPORTUNITIES

54.     The Plaintiff re alleges and incorporates by reference paragraphs 1 through 53 as if alleged herein.

55.     On September 13, 1988 Congress amended the Fair Housing Act to prohibit, *inter alia*, housing practices that discriminate on the basis of familial status. 42 U.S.C. §§ 3601 et seq. In amending the Act, Congress recognized that "families with children are refused housing despite their ability to pay for it." H.R. Rep. No. 711, 100th Cong., 2nd Sess. (1988).  In addition, Congress cited a HUD survey that found 25% of all rental units exclude children and that 50% of all rental units have policies that restrict families with children in some way. *See* Marans, *Measuring Restrictive Rental Practices Affecting Families With Children: A National*

*Survey*, Office of Policy, Planning and Research, HUD, (1980). The HUD survey also revealed that almost 20% of families with children were forced to live in less desirable housing because of restrictive policies. Congress recognized these problems and sought to remedy them by amending the Fair Housing Act to make families with children a protected class.

56.     The Defendants violated the Act by refusing to rent, or sell after the making of a bona fide offer, or refusing to negotiate for the rental or sale of, or otherwise made unavailable or denied, a dwelling based upon sex and familial status, which is prohibited by the statute that is codified at 42 U.S.C. § 3604(a) and the regulations that are found at 24 CFR §§ 100.60.

57.     The specific regulations under § 100.60 that these actions violate are as follows:

a.   Using different qualification criteria or applications or sale or rental standards or procedures…, because of …sex,.. familial status.

b.   Evicting tenants because of their …sex, .. familial status.

58.     Defendants' actions were done in knowledge of the unlawfulness of their acts and in total and reckless disregard of Plaintiff's rights.

59.     As a result of Defendants' actions described above, Plaintiff TIESHA DAVIS, and her children, suffers and continues to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of sex and familial status.

WHEREFORE, Plaintiff, TIESHA DAVIS demands judgment against Defendants, ZRS MANAGEMENT, LLC and ZOM FOXCROFT, L.P. d/b/a SORRENTO AT MIRAMAR to enjoin Defendants from discriminating against Plaintiff herein, and preventing discrimination to women and families with children in the future as follows:

a.      That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating on the basis of sex and familial status;

b.      That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their sex or familial status;

c.      That the Defendants allow TIESHA DAVIS, to rent an apartment free from discrimination;

d.      An award of appropriate compensatory and punitive damages to TIESHA DAVIS to compensate her for their actual damages and for the humiliation, embarrassment and emotional distress cause by the Defendants' discriminatory actions;

e.      That the Court declare that the Defendants acts' were willful and wanton and in reckless disregard of the Plaintiff's civil rights under law;

f.      Order Defendants to provide a notice to all tenants with children for all buildings owned and/or controlled by the Defendants, their rights under the Fair Housing Act;

g.      Order that the Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently owned, managed and/or controlled by Defendants, of the terms of the Court's Order and the Fair Housing Act, and implementing regulations.

h.      Order that the Defendants shall maintain for inspection by Plaintiffs and all other tenants at its rental offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations.

i.      Find that Plaintiffs are entitled to an award of attorneys' fees and costs, and reserve ruling as to the amounts and the applicable multiplier until the conclusion of the trial on this matter;

j.      And grant any other such relief as this Court deems just and equitable.

## COUNT II
## VIOLATION OF THE FAIR HOUSING ACT DISCRIMINATION
## IN TERMS AND CONDITIONS

60.     The Plaintiff re alleges and incorporates by reference paragraphs 1 through 53 as if alleged herein.

61.     The foregoing conduct of Defendants constitutes discrimination against any person in the terms, conditions, and privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of familial status, is discriminatory and unlawful.

62.     The Defendants violated the Act discriminating against it and its constituents in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of their race and color, by imposing different rental charges for the rental of a dwelling upon any person because of race and color, which is prohibited by the statute that is codified at 42 U.S.C. § 3604(b) and the regulations that are found at 24 CFR §§ 100.65

63      The specific regulations under § 100.65 that these actions violate are as follows:

a.   Using different provisions in leases …, because of sex and familial status.

b.   Failing to process an offer for the sale or rental of a dwelling or to communicate an offer accurately because of sex and familial status.

64.     Defendants' actions were done in knowledge of the unlawfulness of their acts and in total and reckless disregard of Plaintiff's rights.

65.     As a result of Defendants' actions described above, Plaintiff TIESHA DAVIS, and her children, suffers and continues to suffer irreparable loss and injury including, but not

limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of sex and familial status.

WHEREFORE, Plaintiff,  TIESHA DAVIS demands judgment against Defendants, ZRS MANAGEMENT, LLC and ZOM FOXCROFT, L.P. d/b/a SORRENTO AT MIRAMAR to enjoin Defendants from discriminating against Plaintiff herein, and preventing discrimination to women and families with children in the future as follows:

a.      That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating on the basis of sex and familial status;

b.      That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their sex or familial status;

c.      That the Defendants allow TIESHA DAVIS, to rent an apartment free from discrimination;

d.      An award of appropriate compensatory and punitive damages to TIESHA DAVIS to compensate her for their actual damages and for the humiliation, embarrassment and emotional distress cause by the Defendants' discriminatory actions;

e.      That the Court declare that the Defendants acts' were willful and wanton and in reckless disregard of the Plaintiff's civil rights under law;

f.      Order Defendants to provide a notice to all tenants with children for all buildings owned and/or controlled by the Defendants, their rights under the Fair Housing Act;

g.      Order that the Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently owned, managed and/or controlled by Defendants, of the terms of the Court's Order and the Fair Housing Act, and implementing regulations.

h.      Order that the Defendants shall maintain for inspection by Plaintiffs and all other tenants at its rental offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations.

i.      Find that Plaintiffs are entitled to an award of attorneys' fees and costs, and reserve ruling as to the amounts and the applicable multiplier until the conclusion of the trial on this matter;

j.      And grant any other such relief as this Court deems just and equitable.

### COUNT III
### VIOLATION OF THE BROWARD COUNTY CODE PREGNANCY DISCRIMINATION IN HOUSING

66.     The Plaintiffs re allege and incorporate by reference paragraphs 1 through 53 as if alleged herein.

67.     Chapter 16 ½-35 of the Broward County Code of Ordinances is the local version of the Fair Housing Act that is substantially equivalent to the rights and remedies under the Federal Fair Housing Act.  The discriminatory classifications protected under the Broward County Code include the following: "a classification on the basis of race, color, religion, sex, national origin, age, marital status, political affiliation, familial status, disability, sexual orientation, pregnancy, gender identity or expression, veteran or service member status, lawful source of income, or being the victim of dating violence, domestic violence, or stalking. Familial status, veteran or service member status, lawful source of income, or being the victim of dating violence, domestic violence, or stalking shall only be included in this definition for the purpose of claims alleging a discriminatory housing practice under this Act."  Section 16 ½-3(p).

68.     In addition to the foregoing conduct being discriminatory on the basis of sex and familial status, it is also discriminatory on the basis of pregnancy.

69.     As such, the Defendant SORRENTO discriminated against DAVIS on the basis of sex, familial status, and pregnancy in violation of Section 16 12-35(a), (b), and (d) by the following:

(a) To refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, or otherwise to make unavailable or deny, a dwelling to any person because of a discriminatory classification.

(b) To discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of a discriminatory classification.

(d) To make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on a discriminatory classification, or an intention to make any such preference, limitation, or discrimination.

70.     Defendants' actions were done in knowledge of the unlawfulness of their acts and in total and reckless disregard of Plaintiff's rights.

71.     As a result of Defendants' actions described above, Plaintiff TIESHA DAVIS, and her children, suffers and continues to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of sex, pregnancy and familial status.

WHEREFORE, Plaintiff,   TIESHA DAVIS demands judgment against Defendants, ZRS MANAGEMENT, LLC and ZOM FOXCROFT, L.P. d/b/a SORRENTO AT MIRAMAR to enjoin Defendants from discriminating against Plaintiff herein, and preventing discrimination to

women and families with children in the future as follows:

      a.      That the Court declare that the actions of the Defendants violated Broward County Code by discriminating on the basis of sex, familial status, and pregnancy/

      b.      That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their sex, pregnancy, or familial status;

      c.      That the Defendants allow TIESHA DAVIS, to rent an apartment free from discrimination;

      d.      An award of appropriate compensatory and punitive damages to TIESHA DAVIS to compensate her for their actual damages and for the humiliation, embarrassment and emotional distress cause by the Defendants' discriminatory actions;

      e.      That the Court declare that the Defendants acts' were willful and wanton and in reckless disregard of the Plaintiff's civil rights under law;

      f.      Order Defendants to provide a notice to all tenants with children for all buildings owned and/or controlled by the Defendants, their rights under the Fair Housing Provisions of the Broward County Code;

      g.      Order that the Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently owned, managed and/or controlled by Defendants, of the terms of the Court's Order and the Fair Housing Act, and implementing regulations.

      h.      Order that the Defendants shall maintain for inspection by Plaintiffs and all other tenants at its rental offices, copies of the Housing Discrimination provisions of the Broward County Code.

i.      Find that Plaintiffs are entitled to an award of attorneys' fees and costs, and reserve ruling as to the amounts and the applicable multiplier until the conclusion of the trial on this matter;

j.      And grant any other such relief as this Court deems just and equitable.

## COUNT IV
## VIOLATION OF THE FAIR HOUSING ACT DISCRIMINATORY PUBLICATIONS

72.     The Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if alleged herein.

73.     By printing and promulgating discriminatory occupancy standards for renting at all Defendant's rental communities, the Defendants violated the Act by making, printing or publishing, or causing to be made, printed or published statements and advertisements, with respect to the rental or sale of a dwelling that indicated a preference, limitation, or discrimination based on race, national origin, sex, and familial status.

74.     By publishing that a requirement of tenancy is providing doctor's note verifying pregnancy, and requiring provision an ultrasound picture to the defendants is discrimination as it places additional, invasive and unconscionable burdens based upon sex and familial status.

75.     By publishing that a requirement of tenancy is a non-child support record from the child support office and providing doctor's note verifying pregnancy, and requiring provision an ultrasound picture to the defendants is discrimination, as it places additional, invasive and unconscionable burdens based upon familial status.

76.     By publishing a requirement of tenancy as requiring an original social security card for each adult and child is discrimination as it indicates a preference, limitation, or discrimination based on national origin.

77.     By publishing a requirement of tenancy as requiring "no arrests" indicates preference, limitation, or discrimination based on race, as there is a known disparate impact of no arrest policies on race.

78.     Plaintiff AKIA WIGGINS-SHABAZZ suffered mental pain and anguish by facing such discrimination based upon their race and color.

79.     As a result of the acts and conduct of the defendants, Plaintiff HOPE has suffered and continues to suffer interference with its mission, diversion of its resources and obstruction of its purpose of ensuring equal housing opportunities throughout South Florida free from race and color discrimination. Plaintiff HOPE has been, and continues to be adversely affected by the acts, policies, and practices of the Defendant and/or their agents.

80.     In addition, as described above, Plaintiff, HOPE has sponsored, promoted and organized numerous educational programs in both Broward and Dade Counties. Said programs were funded and established in order to stop current housing discrimination and future housing discrimination. Defendants' discriminatory actions have frustrated Plaintiff's HOPE'S goal of promoting equality, nullified Plaintiff, HOPE'S numerous educational programs, and have forced Plaintiff, HOPE to continue funding educational programs that would not have been necessary in the absence of Defendants' discriminatory actions.

81.     Additionally, Plaintiff HOPE has been forced to perform "testing" at Defendants' properties in order to discover and document Defendants' discriminatory actions.

82.     As a result, the described discriminatory actions undertaken by all named Defendants have injured Plaintiff, HOPE by (a) interfering with the efforts and programs of Plaintiff HOPE which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced HOPE to devote scarce resources to identify and counteract

defendant's unlawful housing practices; and (c) interfered with the rights of HOPE's constituents in both Dade and Broward counties from enjoying the benefits of living in an integrated community and thereby frustrating HOPE's mission and purpose.

WHEREFORE, Plaintiffs, AKIA WIGGINS-SHABAZZ and HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. demand judgment against Defendants, ZRS MANAGEMENT, LLC; ZOM FOXCROFT, L.P. d/b/a SORRENTO AT MIRAMAR; ZOM MONTERRA, L.P., d/b/a MONTERRA APARTMENTS to enjoin Defendants from discriminating against Plaintiffs herein, and preventing discrimination in all of their premises in the future as follows:

a.     That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against tenants and prospective tenants by publishing discriminatory requirements and materials based on national origin, race, familial status and sex;

b.     That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their national origin, race, familial status and sex;

c.     An award of appropriate compensatory and punitive damages to AKIA WIGGINS-SHABAZZ, to compensate her for her actual damages for the humiliation, embarrassment and emotional distress cause by the Defendants' discriminatory actions;

d.     An award of appropriate compensatory and punitive damages to Plaintiff HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. and against Defendants to compensate it for the drain on its resources that can be reasonably attributed and the frustration

of HOPE's purpose of enforcing the Fair Housing laws in Florida and to educate the public to

combat the effects of the discrimination perpetrated to such victims of housing discrimination;

e.      That the Court declare that the Defendants' acts were willful and wanton and in

reckless disregard of the Plaintiffs' civil rights under law;

f.      Order Defendants to provide a notice to all tenants with children for all buildings

owned and/or controlled by the Defendants, their rights under the Fair Housing Act;

g.      Order that the Defendants instruct all of its employees, agents, independent

contractors and/or other persons who deal with the rental or management of any and all housing

currently owned, managed and/or controlled by Defendants, of the terms of the Court's Order

and the Fair Housing Act, and implementing regulations.

h.      Order that the Defendants shall maintain for inspection by Plaintiffs and all other

tenants at its rental offices, copies of the Fair Housing Act, Fair Housing Amendments Act and

implementing regulations.

i.      Find that Plaintiffs are entitled to an award of attorneys' fees and costs, and

reserve ruling as to the amounts and the applicable multiplier until the conclusion of the trial on

this matter;

j.      And grant any other such relief as this Court deems just and equitable.

**THE PLAINTIFFS, DEMAND A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER.**

Respectfully submitted this 3rd day of April, 2018

By:     s/ Matthew W. Dietz, Esq.
Matthew W. Dietz, Esq.
Florida Bar No. 0084905
**Disability Independence Group, Inc.**
2990 Southwest 35th Avenue

Miami, Florida 33133
Telephone: (305) 669-2822
Facsimile: (305) 442-4181
Email: mdietz@justdigit.org
        lgoodman@justdigit.org
        aa@justdigit.org